Trott *v.* Hild, Appellant.

Argued March 20, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Burton Spear,* for appellant.

*Herman Moskowitz,* for appellees.

OPINION BY GUNTHER, J., June 10, 1959:

This appeal is from the final decree of the Court of Common Pleas of Philadelphia County arising from an equity suit brought by James H. Trott and Heretta E. Trott, his wife, and by Andrew F. Bernzott and Emma D. Bernzott, his wife, to recover moneys paid by them to appellant, Charles J. Hild, a licensed real estate broker. On October 23, 1957, the Trotts entered into a construction sales agreement with appellant, as agent for McHenry Homes, Inc., for the construction and purchase of a home to be erected on a lot on Worthington Mill Road, Richboro, Pennsylvania, owned by the corporation for a price of $16,900.00. They seek to recover $2,700.00 paid as a deposit. At the time of signing the agreement, appellant had on deposit in his agency account a certain sum as a result of hand money paid under agreement of sale by the purchasers of the existing home owned by Trotts. Trotts authorized appellant to transfer $450.00 of this sum and apply it toward the purchase price of the home to be erected together with the sum of $1,250.00 which they paid to appellant. Subsequently, certain extra work was agreed to between Trotts and McHenry Homes, Inc., in the amount of $2,077.00 of which an additional $100.00 was authorized to be transferred

from the previous agency account and a check in the amount of $900.00 was endorsed in blank. These sums were paid by appellant directly to McHenry Homes, Inc.

On September 25, 1957, Bernzotts entered into a similar agreement for a home to be constructed and sold to them involving another lot owned by the corporation immediately adjacent to the one involving Trotts. The consideration for this transaction was $17,200.00 and the sum of $1,000.00 was paid to appellant as a deposit on account. This sum was also paid to McHenry Homes, Inc., by appellant. On November 26, 1957, McHenry Homes, Inc. was adjudicated a bankrupt, and on January 22, 1958, the trustee in bankruptcy rejected the agreements entered into by the parties here involved. Appellees contended that since the homes were unfinished and no conveyance of title to said lots and incomplete homes were tendered to them, the adjudication in bankruptcy terminated the agreements, entitling them to the return of their respective deposits.

Appellant defended these suits on the ground that appellees directed him to pay over these funds directly to McHenry Homes, Inc.; that the owner-contractor refused to approve the agreements until the deposits were paid over to it; and to be used in the course of construction of said homes, and that, with respect to the extra work, he did not act as agent of McHenry Homes, Inc. Appellees denied these defenses in reply and also raised the Act of 1957, July 9, P. L. 608, section 4, 63 P.S. 440, contending that this Act prohibited the payments as made by appellant and, having made such payments, he thereby became civilly liable therefor.

The court below ruled that the Act of 1957, supra, created civil liability for its violation and that any

offer of proof to show that appellant paid the funds to McHenry Homes, Inc. upon the specific request of appellees became irrelevant. A decree was entered imposing personal liability on appellant for the funds in question. From this adjudication this appeal followed. At the time of argument, appellees filed a motion to quash the appeal for the reasons that appellant had not filed any printed record or printed briefs.

We do not condone the failure to comply with the Rules of this Court and, ordinarily, the appeal should be quashed. *Matteo v. Bofoni,* 177 Pa. Superior Ct. 16, 107 A. 2d 738. However, having heard the arguments on the merits and being of the opinion that impelling reasons exist for the disposition of this cause on the merits rather than on procedural grounds, the motion to quash the appeal is denied. See *Beato v. DiPilato,* 175 Pa. Superior Ct. 602, 106 A. 2d 641.

The questions raised on this appeal are (a) whether the Act of 1957, supra, regulating the manner in which deposits are to be handled by a broker, creates a civil liability for failure to comply with the provisions of this Act, and (b) whether evidence is admissible to show that any noncompliance with said Act was done at the request of the prospective purchasers here involved.

The purpose of the Act of 1957, supra, as disclosed by the title, reads as follows: "An Act amending the Act of May 1, 1929 (P. L. 1216) entitled 'An act to define real estate brokers and real estate salesmen; providing for the licensing, regulation and supervision of resident and non-resident real estate brokers and real estate salesmen and their business', changing examination, licensing, suspension and revocation provisions, increasing fees, and prescribing additional fees and penalties." The pertinent provisions of this Act provide as follows:

"Section 4. (a)  The commission may, upon its own motion, and shall, promptly, upon the verified complaint in writing of any person setting forth specifically the wrongful act or acts complained of, investigate any action or business transaction of any licensed real estate broker or real estate salesman; and shall have the power temporarily to suspend or permanently to revoke licenses theretofore issued by the department, under the provisions of this act, at any time when, after due proceedings as hereinafter provided, it shall find the holder thereof to have been guilty,

"(11)  Of failure to comply with the following requirements:

"(i)  All deposits or other moneys accepted by every person, copartnership, corporation or association, holding a real estate broker's license under the provisions of this act, must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in full amount thereof at the time of the consummation or termination.

"(iv)  Every real estate broker shall immediately deposit such moneys, of whatever kind or nature, belonging to others, in a separate custodial or trust fund account maintained by the real estate broker with some bank or recognized depository until the transaction involved is consummated or terminated, at which time the real estate broker shall account for the full amount received.  Under no circumstances shall a real estate broker permit any advance payment of funds belonging to others to be deposited in the real estate broker's business or personal account, or to be commingled with any funds he may have on deposit.

"(v)  Every real estate broker shall keep records of all funds deposited therein, which records shall indicate clearly the date and from whom he received

money, the date deposited, the dates of withdrawals, and other pertinent information concerning the transaction, and shall show clearly for whose account the money is deposited and to whom the money belongs. All such records and funds shall be subject to inspection by the commission. Such separate custodial or trust fund account shall designate the real estate broker, as trustee, and such account must provide for withdrawal of funds without previous notice."

The Act in question very plainly is intended to correct certain abuses and losses which had previously arisen by the failure of real estate brokers to keep funds, not belonging to them, separate and apart from their own funds, and gives the State Real Estate Commission, upon proper investigation, the *power to suspend or revoke licenses* of those who fail to comply. The Act set up a general rule of practice to be followed but it did not preclude special circumstances which might arise in a particular transaction. Thus, for example, under a construction-sale agreement, where deposits of moneys are required, from time to time, to be disbursed toward construction and completion could be considered a special circumstance, and the commission would have to determine, by proper investigation, whether the Act has been complied with. Likewise, there is no provision in said Act which precludes a prospective owner and contractor from agreeing one with the other of making certain down payments directly with the contractor either on account of the contract price or extra work agreed to. Any construction which would include these and other special considerations under the operation of the Act would be unreasonable and impossible of execution. In the construction of legislative enactment, there is a presumption that the legislature does not intend a result that is absurd, impossible of execution or unrea-

sonable. Statutory Construction Act of 1937, May 28, P. L. 1019, Art. IV, section 52, 46 P.S. section 552.

A careful consideration of the Act also reveals that nowhere is there any intention on the part of the legislature to impose personal liability on any broker for violation of any of its provisions. What the legislature enactment does provide is the power in the commission to suspend or revoke the license of such individual upon cause shown. The exercise of this power by the commission, being penal in nature, requires a strict construction. To hold that a violation of this enactment, per se, imposes liability on a broker is unwarranted. By analogy, it was contended that the Vehicle Code mentions nowhere a legislative intention to create civil liability but the courts have held that violations under it are negligence per se, with resulting liability in trespass actions. While this may be true under certain circumstances, such a sweeping generalization cannot rule this case even by analogy. The relationship between a broker and principal is based upon the contractual relationship of agency. A broker is primarily the agent of the person who has hired him to perform a specific act. Appellees here are attempting to impose liability not because the broker paid over the sums in question to his principal, but because the principal defaulted in his promise to build and convey the homes in question. The rescission here involved was caused by the act of bankruptcy of the principal which occurred after the moneys were receipted by the broker. Under the law of agency, where an agent has received moneys belonging to a disclosed principal, the agent is not under a duty to return the same to the other party to the transaction if the cause for rescission arises after their receipt. Restatement, Agency, section 340. Furthermore, we have held that an agent is not liable for the return of a deposit of down money

on behalf of a disclosed principal under an agreement for the sale of real estate if the sale is not consummated. *Brunetto v. Ferrara*, 167 Pa. Superior Ct. 568, 76 A. 2d 448; *Yentis v. Mills*, 299 Pa. 25, 148 A. 909; *Gable v. Crane*, 24 Pa. Superior Ct. 56. However, we are not required to decide in this case what, if any, possible liability a broker may be subjected to for violation of the Act of 1957, supra, but merely to determine whether the legislature intended to create civil liability, per se, for violation of the statutory enactment. We conclude that the legislature did not create or intend to create such liability.

We are of the opinion that evidence to show any noncompliance with the Act in question was done at the request of the appellees and should have been received by the court below. The violation here involved, if any, was not *malum prohibitum* which would preclude the offer of excuse or extenuating circumstances. Under section 4(b) of the Act, providing for hearings before the commission, it is provided that the broker "shall also be entitled to present such evidence, oral and written, as he may see fit, and as may be pertinent to the inquiry." If such evidence may be considered pertinent to the question whether a broker's license should be revoked or suspended, we fail to see why such evidence should be precluded in a case where civil liability is attempted to be imposed. The crux of the case turned on this evidence, particularly when two of the appellees, involving deposits belonging to them, did not hesitate in requesting appellant to withdraw moneys from his account to be used as a down payment on the property to be purchased by them. We therefore conclude that this evidence should have been admitted and proper findings made based thereon.

RHODES, P. J., and WRIGHT, J., concur in the result.

Decree reversed and the record is remanded as per our order dated April 16, 1959.