Pennsylvania State Real Estate Commission *v.*
Keller, Appellant.

Argued September 26, 1960.   Before Jones, C. J.,
Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Bruce E. Cooper,* with him *Cooper and Woodside,* for appellant.

*George W. Schroeck,* Assistant Attorney General, with him *Morris Dean,* Deputy Attorney General, and *Anne X. Alpern,* Attorney General, for Pennsylvania State Real Estate Commission, appellee.

OPINION BY MR. JUSTICE BOK, November 15, 1960:

The Commission, plaintiff, ordered suspended for four months the license of appellant defendant, a real estate broker. This action was taken under §10(a) of the Act of May 1, 1929, P.L. 1216, 63 PS §440(a), as amended, which allows the investigation of challenged affairs of real estate brokers and the suspension or revocation of their licenses for certain specified acts.

By the same Act, at Section 10(d), 63 PS §440(d), as amended by the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, 71 PS §§1710.41 & 1710.51, the decision of the Commission is reviewable by the Court of Common Pleas of Dauphin County. On appeal to it, that court considered and dismissed appellant's appeal from the order of the Commission suspending his license, and he then appealed to the Superior Court, which, with Judge WOODSIDE abstaining, divided evenly and hence sustained the Dauphin County court without opinion. Shortly after, we allowed allocatur.

Appellant was charged with and found guilty of three of the thirteen violations enumerated in §10(a) of the Act, 63 PS §440(a). These were:

(1) Knowingly making a substantial misrepresentation;

(5) Failing to account for or to pay over moneys belonging to others, which had come into his possession arising out of a real estate transaction;

(7) An act or conduct in connection with a real estate transaction that demonstrates incompetency, bad faith, or dishonesty.

Since we feel that the case was wrongly decided and must be reversed, we take note that the Dauphin County court stated in its opinion its belief that the conduct of appellant showed no dishonesty and that he had made no substantial misrepresentation. We will therefore search the record for a showing of a failure to pay over money belonging to others, of incompetency, or of bad faith, remembering that the Real Estate Broker's Law is penal and must be strictly construed: *Trott v. Hild,* 190 Pa. Superior Ct. 85 (1959), 151 A. 2d 832.

The ground facts are that a man named Hudson wanted to buy a house. The owners of one in Pottstown, Montgomery County, had engaged appellant to sell theirs, and the latter's salesman showed it to Hudson. When he liked it, the salesman turned him over to appellant Keller. The owners wanted $6500 for the property but finally agreed on $6000, with G.I. financing. To support the finding of the court below that there was no misrepresentation, Hudson testified as follows about the amount of down payment to get G.I. financing: "A. Well, on a $6000 home, to my knowledge, it was $600 plus the settlement charge of approximately $200 more. Well, I had that much."

It then appeared that Hudson had lost his Service discharge papers, which were needed to get the government financing, and he therefore signed an agreement of sale and paid $100 down. Appellant signed

the agreement as agent for the owners and also signed and gave Hudson a receipt for the $100 on account of the $6000. Further, he put the $100 in his escrow account at once.

The agreement of sale contained two pertinent provisions. One was: "This sale is subject to obtaining Veterans' Administration financing." The other was: "SETTLEMENT to be made on or before 60 days after financing has been arranged and said time is hereby agreed to be the essence of this agreement. Should the buyer fail to make settlement as herein provided the sum or sums paid on account are to be retained by the seller, either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect, and in the latter case this contract shall become null and void and all copies to be returned to seller for cancellation."

From May until early September appellant worked on getting Hudson's discharge papers and also a certificate of entitlement showing Hudson's right to the Service loan. These papers had to be in hand before the financing could be arranged. When they had been secured, appellant took Hudson to Mr. Erb, Vice President of the Philadelphia National Bank in Pottstown, and this gentleman's written statement was offered in evidence by agreement. It said, pertinently, that Hudson "desired us to finance a $5400 VA mortgage on a property he was buying . . . for a reported consideration of $6000." He then explained to Hudson that his bank was limited in taking VA mortgages, that it normally granted them only to its customers, and that he should have $600 "representing the balance of his down payment, on deposit" before the loan could be approved. Erb, looking up Hudson's deposit in the bank, found it to be less than $50. His statement ended: "The loan was available to Mr. Hudson

458

provided he had the $600 on deposit at the time he made the application."

It appears that Hudson was then dissuaded from the purchase by his father, for he later bought another property elsewhere. In breaking off the deal with appellant, it is agreed that Hudson went to appellant's office and signed the following paper: "It is agreed that I no longer have any interest to purchase the property of Theodore Reed at 179 Sheridan St., Pottstown, Pa.; therefore, my One Hundred ($100.00) Dollars deposit is forfeited previous to 60 day agreement of sale that expires September 10, 1956". Appellant drew up this paper on the advice of counsel. Hudson gave this as the odd reason for signing it: "I thought I was doing something radically wrong in holding off like that with a man in business, so I didn't know what to do. I never dealt with nothing like this before."

After Hudson signed the release just mentioned appellant drew the $100 out of his escrow account in three checks, $50 to the owner-seller because he had put down that amount to buy a new home and had to forfeit it when his deal with Hudson fell through, and $25 each to his salesman and himself.

The court below based its action upon findings of fact (1) that appellant did not secure the Service financing to float the loan and close the sale, and (2) that Hudson demanded the return of the $100 from appellant, who refused.

The answer to (1) is that the agreement did not require appellant to secure five cents' worth of financing. The mere fact that the sale was made subject to financing cannot be tortured into the conclusion that appellant should, at his peril, have found it. The evidence, au contraire, is that he brought the deal to a boil but that Hudson jumped out of the pot when his father persuaded him to do so. In fact, the in-

ference is clear, from Hudson's statement to Erb, that he had the balance of down money at home, and from Erb's statement that the mortgage was ready for him when he deposited it, that Hudson alone unwound the deal.

The answer to (2) is that appellant had a perfect right to refuse the return of the $100. Hudson directed and approved it by signing the release, which appellant drew on the advice of counsel.

This is not a case of our being bound by basic findings supported by competent and substantial evidence. Such findings, even when fully credited, give no support to the action of the Commission and the court below.

Beyond this, there is no shred of bad faith or incompetence in appellant's actions. He segregated the $100 and later repaid it rather obviously in obedience to an agreement with the seller-owner: he and his salesman gave service for the amounts appellant retained for the two of them. He acted on advice of counsel, and no act of his was covert or despoiled. He is entitled to a clear quittance.

The order of the Superior Court is reversed, and so is the order of the Court of Common Pleas of Dauphin County. The record is remanded to the latter court with directions to enter judgment for appellant after ordering the restoration of his license. Appellee to pay the costs.