## State Real Estate Commission v. Carroll

*Moses K. Rosenberg, Edward W. Rothman, Leonard Spear* and *Meranze, Katz & Spear,* for appellant.

*Walter E. Alessandroni,* Attorney General, *Charles A. Woods, Jr.,* Deputy Attorney General and *David S. Molod,* Assistant Attorney General, for Commonwealth.

LIPSITT, J. May 9, 1966.—This is an appeal by Frank I. Carroll (hereinafter called "Carroll" and "appellant") from an adjudication and order of the State Real Estate Commission (hereinafter called "commission") suspending appellant's license to practice as a real estate broker for a period of 90 days.

Pursuant to a citation issued on the complaint of Percy L. Ransome, Jr., a prospective buyer of realty, a hearing was held in Philadelphia, Pa., on April 5, 1962. The following findings of fact were made by the commission (wherein Percy L. Ransome, Jr. is referred to as the "complainant" and Carroll as the "respondent") :

"1. The 1962-63 renewal, No. 548, of real estate broker's license, No. 12284, issued to Frank I. Carroll on August 1, 1949, is in force up to the present time.

"2. The 1962-63 renewal, No. 551, of real estate broker's license, No. 16331, issued to William A. Carroll on March 1, 1956, is in force up to the present time.[1]

"3. Pursuant to the purchase of property at 7112 Greenway Avenue in Philadelphia, complainant gave to respondent, Frank I. Carroll, two checks, dated December 7, 1959, and December 23, 1959, totaling $850.-00 as a deposit on the above mentioned property.

---

[1] The citation contained charges against William A. Carroll which were dismissed.

"4. Upon termination of the prospective purchase of the property at 7112 Greenway Avenue, on March 4, 1960, due to the failure of complainant to obtain adequate mortgage, respondent, Frank I. Carroll, retained with the consent of complainant possession of the $850.00, the deposit on the property at 7112 Greenway Avenue.

"5. On March 26, 1960, complainant executed a second agreement of sale for a property at 5115 Pine Street, Philadelphia, Pennsylvania, to which respondent, Frank I. Carroll, applied the $850.00 in his possession as the deposit.

"6. Subsequent to the signing of the agreement of sale, dated March 26, 1960, complainant gave respondent, Frank I. Carroll, additional moneys totaling $1,-100.00.

"7. Respondent failed to furnish complainant-buyer with a copy of the agreement of sale for the premises at 5115 Pine Street.

"8. Complainant failed to appear at the settlement for purchase of the premises at 5115 Pine Street held at the Philadelphia Title Insurance Company, 5110 Walnut Street on July 11, 1960.

"9. Complainant failed to pay the balance of the consideration necessary to complete the purchase of the premises at 5115 Pine Street, Philadelphia, Pennsylvania, by July 15, 1960, and July 17, 1960, the extension dates granted by the sellers of the property.

"10. On August 1, 1960, respondent received a letter from the State Real Estate Commission, accompanied by the formal complaint, signed by the complainant in connection with the transaction covering 5115 Pine Street.

"11. On September 29, 1960, respondent Frank I. Carroll, sent his attorney a check in the amount of $1,200.00 which was subsequently turned over to the sellers of the premises at 5115 Pine Street as liquidated

damages for complainant's alleged breach of the agreement of sale.

"12. Respondent retained the balance of $750.00 from the total of $1,950.00 collected by him as his earned commission in the real estate transaction.

"13. The agreement of sale of March 26, 1960, for the purchase of the premises at 5115 Pine Street states that $850.00 is the required amount of deposit to be paid at the signing of this agreement of sale.

"14. The money paid over by respondent through his attorney to the sellers, as set forth in finding 11, was paid before the transaction for the sale of the premises at 5115 Pine Street was terminated due to the fact that a dispute was pending between the parties which the respondent had knowledge of or should have had knowledge of.

"15. Complainant has requested from respondent the return of $1,100.00, the amount given him after the agreement of sale was executed, but to this date respondent has refused payment of these moneys to complainant".

Appellant has filed exceptions to findings of fact numbers 5, 7, 11, 14 and 15.

The commission made the following conclusions of law relating to the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended, 63 PS §440:

"1. The State Real Estate Commission has jurisdiction in this case.

"2. Respondent, by failing to voluntarily furnish to complainant with copy of the agreement of sale for the premises at 5115 Pine Street, violated Section 10(a) subsection (9) of the Real Estate Brokers License Act, supra, which provides:

" '(9) Of failing to furnish voluntarily a copy of the agreement of sale to the buyer and the seller, and a copy of the lease to the lessor and lessee.'

"3. Respondent, by paying over moneys in excess of

$850.00 given to him by complainant concerning the transaction for the sale of the premises at 5115 Pine Street, before the transaction was terminated, violated Section 10(a) subsection (11)(i) of the Real Estate Brokers License Act, supra, which provides:

" '(i) All deposits or other moneys accepted by every person, copartnership, corporation or association, holding a real estate broker's license under the provisions of this act, must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in the full amount thereof at the time of the consummation or termination.'

"4. Respondent, by turning over the $850.00 deposit given him by complainant on the purchase of property located at 5115 Pine Street, before the transaction of sale was terminated, violated Section 10(a) subsection (11) (i) of the Real Estate Brokers License Act, supra, which provides:

" '(i) All deposits or other moneys accepted by every person, copartnership, corporation or association, holding a real estate broker's license under the provisions of this act, must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in the full amount thereof at the time of the consummation or termination.'

"5. Respondent, by failing to pay to complainant or to hold onto moneys in excess of $850.00 given him by complainant in connection with the purchase of the property located at 5115 Pine Street violated section 10(a) subsection (5) of the Real Estate Brokers License Act, supra, which provides:

" '(5) Of any failure to account for, or to pay over, moneys belonging to others, which has come into his, her, or its possession arising out of a real estate transaction.'

"6. Respondent, by his conduct in the instant real estate transaction, violated section 10(a) subsection (7) of the Real Estate Brokers License Act, supra, which provides:

" '(7) Of any act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty' ".

Appellant has filed exceptions to conclusions of law numbers 2, 3, 4, 5 and 6.

In connection with finding number 5, no discussion is deemed necessary, as the ground for the objection has no import in the disposition of this matter.

Principally there are two issues involved in the controversy: (1) Whether or not Carroll failed to furnish voluntarily a copy of an agreement of sale to the buyer, and (2) whether or not Carroll failed to account for or to return funds belonging to a prospective buyer which came into his possession in a real estate transaction.

Finding of fact number 7 and conclusion of law number 2 pertain to the first problem. Appellant's brief covers the testimony of the buyer Ransome in meticulous detail, pointing out several contradictions and conflicts, particularly in relation to the amount of cash to be required and the financing. However, it would be fair to say that these variations, although they may be considered by a tribunal in determining the believability of a witness, are collateral to the problem at issue, namely, if there is adequate evidence to sustain a finding that appellant did not furnish a copy of the agreement of sale to the buyer. The buyer stated that he never received a copy of the agreement of sale. On the other hand, Carroll testified that he did furnish an agreement of sale. This is the familiar situation where there is an oath against an oath, and the administrative agency is faced with the credibility of the witnesses. It is a well-established principle of administrative law that the credibility of a witness is for the

administrative body to determine: Rozauski v. Glen Alden Coal Company, 165 Pa. Superior Ct. 460 (1949).

Apart from conflicting statements in the record between the antagonists, an examination of the testimony by appellant does show that the buyer did not have a copy of the agreement after the extension agreement was signed. The agreement of sale for the premises at 5115 Pine Street was dated March 26, 1960. When it was learned that the loan company would not have funds available on the date set for settlement, June 24, 1960, an extension agreement was executed dated June 6, 1960, designating the settlement date as July 15, 1960. Appellant testified that at the time the buyer signed the extension agreement, he instructed the buyer to pick up a copy at appellant's office after it was executed by the sellers; because the buyer lived only a few blocks away from appellant's office and had stopped on other occasions relative to their dealings, it is argued that buyer should have again stopped to pick up the agreement of sale after the extension agreement had been executed. It is to be noted that the settlement extension had been signed by the sellers on June 6, 1960, and that Carroll in his testimony confirmed, in answer to a question by the counsel for the commission, that on July 5, 1960, the buyer came to Carroll's office to discuss his inability to go through with the transaction. If this is so, there is no reason why a copy of the agreement could not have been furnished to the buyer at that time. Moreover, the Real Estate Brokers License Act, supra, does not require the buyer to request a copy of the agreement of sale or to call for it. It requires the broker to voluntarily furnish an agreement of sale and a reasonable interpretation of this statutory provision would be to place a duty of affirmative action on the part of the broker. Admittedly, there may be special circumstances in a particular transaction which would preclude the imposition of any penalty against a

broker who may not have furnished a copy of an agreement to a buyer or a seller. Any special circumstances are not apparent here.

Despite the definite contentions by Carroll that he had furnished the buyer with a copy of the agreement prior to the signing of the extension agreement, his testimony is, at least, vague in his explanation of the actual circumstances which occurred at the time the buyer allegedly took the agreement from his office. Appellant first said, "I handed the envelope to him with the Agreement of Sale . . .", and upon being questioned by counsel for the commission as to whether he handed the agreement to the buyer physically, replied ". . . I am under oath and I wouldn't want to exactly say whether I did or not, but I think I did". Again there was testimony by appellant that he took the agreement of sale to the buyer's house after the the extension provision had been typed on the rear of the agreement. The agreement may have been in the possession of appellant only for the purpose of typing the extension paragraph, although this explanation was not offered, or it may be considered as a confirmation of buyer's position that he did not, in fact, ever receive a copy of the agreement of sale. A review of all the testimony by Carroll regarding the furnishing of the agreement prior to the signing of the extension provision is indeed confusing and vacillating. There was, in analyzing the whole record, substantial evidence to support the commission's finding of fact number 7 and conclusion of law number 2.

Much more serious than the failure to furnish a copy of an agreement of sale are the violations connected with the accounting and disbursement of the funds received by Carroll in the transaction. Findings of fact numbers 11, 14 and 15 and conclusions of law numbers 3, 4 and 5 are involved in the various phases of this issue. The agreement of sale dated March 26, 1960,

states that Frank I. Carroll, agent for the owners, agrees to sell to Percy L. Ransome, Jr., the premises at 5115 Pine Street, Philadelphia, Pa., for the sum of $12,500, with terms as follows: "cash at signing this Agreement $850.00—cash at settlement $11,-650.00". The settlement was to be made on or before June 24, 1960, and a printed clause in the agreement sets forth:

". . . Should the buyer fail to make settlement as herein provided, the sum or sums paid on account are to be retained by the seller, either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect, and in the latter case this contract shall become null and void and all copies to be returned to seller for cancellation".

There was the extension agreement previously discussed, signed on June 6, 1960, which extended the settlement date until July 15, 1960. On two occasions subsequent to March 26, 1960, Mr. Ransome came into the office of Carroll with cash and paid an additional $1,100.

Carroll admits that he turned moneys over to the sellers in excess of $850, the stated deposit in the agreement. His position is that he gave this money to the sellers as part of the stipulated damages for breach of the agreement. The agreement specifically states that the cash at signing was $850, and the printed forfeiture clause reads that sum or sums *paid* on account are to be retained by the seller. The additional sums were not given until after the agreement had been executed on March 26, 1960. On April 28, 1960, $800 was advanced to appellant, and on June 1, 1960, $300. This additional $1,100 was not to be paid in default of settlement, only the sum paid at the signing of the agreement. There is no provision in the agreement for future payment and no obligation upon the buyer to

make such payments. In his testimony, Carroll said the reason the buyer turned over the money to him was because "[e]vidently he didn't have any bank account or [didn't want to] keep it around the house", and went on to acknowledge that "he [the buyer] only had to put $850.00 in. I had no right to make any demand on him for anything over and above that".

Finding of fact number 14 and conclusions numbers 3 and 4 relate to the question whether the money was paid over to the sellers before the transaction was terminated. The transaction could hardly have been terminated when the buyer had demanded the return of his payments in excess of $850, and Carroll had been informed of the complaint before the commission, prior to giving the money to the sellers. Carroll, nonetheless, claims the matter was terminated and cites as legal authority the case of Pennsylvania Real Estate Commission ex rel. Pohl v. Radnor Real Estate, Inc., 75 Dauph. 180 (1960). It is difficult to comprehend the similarity between the Pohl facts and these here. In Pohl, no money was deposited with the broker but, rather, directly with the seller; the buyer voluntarily paid the balance due on the down payment as a down payment and thereby terminated the transaction. The action by the commission against the broker involved an alleged misrepresentation by the broker to induce the buyer to enter into the transaction.

A transaction is not completed merely when it becomes apparent that it will not reach a successful conclusion. Where funds have been escrowed, the broker has a responsibility which is not discharged until there is a proper disposition of the funds, and only then can the transaction be terminated.

Conclusion of law number 5 carries the most significance, that is, the failure to account for and to pay over the money belonging to the buyer; it may be viewed with conclusion number 6, dealing with the in-

competency or bad faith on the part of appellant. There is substantial evidence to support these conclusions. Appellant argues that demands were made upon him by the sellers through their attorney for the entire sum of money paid by the buyer. Further, Carroll asserts that he paid all of the money to the sellers less his commission upon advice of his own attorney. Neither of these contentions should enable a real estate broker to evade his duty to a person who is a buyer and has actually entrusted funds to him. Here, the broker delivered the money to the sellers in face of the explict resistance of the party who had deposited the money with him and did so where the agreement imposed no necessity upon him to do so. It is of interest that, despite the protestation of innocence of appellant, he did take a commission of $750 when he transferred the $1,200 to the sellers. Had appellant instead treated only $850 as the appropriate deposit, as would have been proper, appellant's commission would have been substantially less. Appellant's interpretation of his obligation as the escrowee increased his commission in the transaction. Carroll's assertion that he could have been sued by the sellers if he did not pay the deposit to them is little justification for his action. First, no attempt had been made by appellant to pay the sellers the $850 less the commission, and, further, even if the sellers would have sought to recover an additional sum, appellant could scarcely excuse the payment of $1,200 to the sellers because he preferred to be sued by the buyer rather than the sellers.

Carroll relies on several cases to vindicate his conduct. In Bezold v. Potamkin, 102 Pa. Superior Ct. 72 (1930), the agreement of sale provided that the deposit would be forfeited upon breach of the agreement by the buyer and the deposit of $600 was paid in two installments. This is clearly distinguished from the present

case. There could be no objection to paying a deposit in two different installments. Here, the deposit was $850, and the additional money had no relation to the deposit, except that it was an advance on the cash that would be needed at the time of settlement.

In Trott v. Hild, 190 Pa. Superior Ct. 85 (1959), where there was a construction sales agreement, deposits of money were required to be disbursed towards construction and completion. The broker delivered certain hand moneys to the seller at the direction of the buyers, who thereafter brought a civil action against the broker for civil liability for failing to comply with the provisions of the Real Estate Brokers License Act, which provides for the manner in which deposits are to be handled by the broker. The critical difference between Trott v. Hild and the instant case is that in the former, the broker's departure from the literal language of the act was done at the express request of the parties involved, and the money had to be disbursed for construction requirements in that type of transaction.

Appellant's reliance upon the case of Pennsylvania State Real Estate Commission v. Keller, 401 Pa. 454 (1960), to avoid the imposition of any penalty because the broker acted on the advice of his attorney is not warranted. In Keller, there was simply no violation of the statute. The broker had the buyer sign a release of the $100 deposit after the buyer refused to go through with the settlement, which happened to be prior to the expiration of the settlement time for the sale. The court merely remarked that appellant had the paper drawn up on the advice of counsel to emphasize that there was no bad faith on the part of the broker, but the act itself was not improper.

There are perhaps no cases directly in point, but more appropriate to the present situation than the authorities relied upon by appellant is the case of

Artzerounian v. Demetriades, 276 Pa. 303 (1923), which Carroll attempts to distinguish. There, the suit arose from a contract of sale which provided that $1,000 was to be paid upon signing of the agreement which was to be forfeited as liquidated damages in case of default by the buyers. Another $1,000 was to be paid within 60 days and the balance was due within 90 days, except that the agreement might be extended for another period upon payment of an additional $1,000. Buyers paid the three sums of $1,000 and sued to recover the money. The court entered judgment for $2,000, holding, at page 305: "If defendant intended the other payments to be forfeited, he should have seen to it that the contract so provided; forfeitures are not favorites of the law. . . ."

The suggestion by appellant that an action in a court of law should have been brought by the buyer against the sellers if the buyer believed the sellers were unjustly enriched cannot be accepted as a serious proposition.

For the reasons set forth herein, we enter the following

ORDER

And now, May 9, 1966, the appeal of Frank I. Carroll from the adjudication and order of the State Real Estate Commission suspending appellant's real estate license is dismissed.