Fibus *v.* State Real Estate Commission.

Argued December 6, 1972, before Judges CRUMLISH, JR., WILKINSON, JR., and MENCER, sitting as a panel of three.

*John B. Nicklas, Jr.,* with him *McCrady, Nicklas, McCrady & Maiello,* for appellant.

*Steven Kachmar,* Assistant Attorney General, with him *Lawrence Alexander,* Assistant Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, January 10, 1973:

This is an appeal from an adjudication and order of the State Real Estate Commission (Commission) suspending, for a period of eleven months, the license of the appellant, Sam Fibus, to practice as a real estate broker.

On October 30, 1970, one Kathryn Duffy filed a complaint against appellant with the Commission. Ap-

pellant was the owner of a certain piece of property located on 45th Street in the City of Pittsburgh. On May 28, 1968, appellant entered into a written agreement with Kathryn Duffy and her husband, who subsequently died before the complaint was filed, for the construction of a home on the 45th Street property. The agreed upon price was $15,000 which was changed on June 4, 1968 to $16,500 to provide for the addition of an air conditioning system, an electronic air cleaner and a humidifier. On June 5, 1968, a down payment of $3,000 was made by the Duffys to the appellant and, following Mr. Duffy's death on July 27, 1968, the appellant asked for and received from Kathryn Duffy an additional $1,500.

On October 23, 1968, appellant submitted to Mrs. Duffy a new agreement with similar terms to the original agreement of May 28, 1968, including provision that a general warranty deed be delivered for the property, and insisted that she sign this second agreement and that she sign certain construction loan mortgage papers. She refused to do so and subsequently requested the return of the $4,500 down payment since the house had not been built or the land deeded to her by the appellant. Appellant has made no refund of the money, and an investigation by the Commission failed to disclose that appellant had any escrow records relative to this transaction.

After the issuance of a citation, a hearing was held in accordance with Section 10(b) of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended, 63 P.S. §440(b). After finding that the procedural elements of due process had been met with respect to appellant's rights, the Commission made the following findings of fact:

"   .   .   .

"5.   On June 5, 1968, the [appellant] promised to build a two-story building on a lot situated at 334-45th

Street, Pittsburgh, Pennsylvania for the complainant and her husband in consideration of $16,500.

"6. Pursuant to said promise, the [appellant] accepted a down payment in the amount of $3,000.00 in the form of a cashier's check.

"7. On August 23, 1968, the [appellant] advised the complainant that he would need an added sum of $1,500.00 as additional deposit toward the construction of said home and pursuant to this request such sum was paid by the complainants.

"8. On October 23, 1968, the [appellant] refused to sign a written agreement for the construction of said house unless complainant also signed a Construction Loan Mortgage, which was not a part of the sale agreement.

"9. After repeated demand, [appellant] refused to return said deposit amounting to $4,500 notwithstanding the fact that he refused to proceed in accordance with the terms of the agreement.

"10. On February 1, 1971, Lawrence E. Mayberry, an investigator for Professional Affairs, conducted an inspection of [appellant's] office in Pittsburgh.

"11. Pursuant to said inspection, the [appellant] was unable to show the investigator any escrow records and stated that he had no escrow records."

We find, after a careful examination of the record, that these findings are supported by substantial evidence.

The Commission's first conclusion of law was that it had jurisdiction in this case. Appellant challenges the Commission in reaching this conclusion by asserting that, since he was selling property that he owned and contracting to build a house thereon, he was not acting as a broker under the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, as amended, 63 P.S. §431 et seq. We believe appellant is in error in this regard and conclude that the Commission had ju-

risdiction here. It was likewise held in *State Real Estate Commission v. Tice*, 200 Pa. Superior Ct. 553, 190 A. 2d 188 (1963), that this Act is applicable not only to brokers in connection with agency transactions, but also where a broker sells his own property. The Superior Court in *Tice* stated: "In our judgment, there can be no justification of an interpretation of the licensing act which would allow a broker to be honest as a broker and dishonest as a property owner. A broker who is dishonest or incompetent in the real estate activities in which he is involved as owner, is not likely to be honest or competent in his activities which are purely brokerage in nature. The purpose of real estate licensure is to bar the dishonest or incompetent from entry into this occupation: Roman v. Lobe, 243 N.Y. 51, 152 N.E. 461." 200 Pa. Superior Ct. at 559, 190 A. 2d at 190-91.

The Commission concluded that the appellant was guilty of a number of offenses described in the Real Estate Brokers License Act. We will consider these separately.

In the adjudication, appellant's conduct was determined to be in violation of Sections 10(a)(1)[1] and 10(a)(2)[2] of the Act, to wit, ". . . knowingly making . . . substantial misrepresentation" and "knowingly making . . . false promise of a character likely to influence, persuade or induce."

Appellant, upon false statements, did lure Mrs. Duffy into making an additional $1,500 down payment which was not called for in the agreement between the parties and then refused to finalize the agreement on the contention that Mrs. Duffy must enter into a construction loan mortgage. Mrs. Duffy testified that after her husband died the appellant approached her and

---

[1] 63 P.S. §440(a)(1).

[2] 63 P.S. §440(a)(2).

asked for an additional $1,500 down payment because she was a widow and was now in a different category. Appellant denied this, contending that the additional deposit was required because Mrs. Duffy had asked for central air conditioning and an air cleaner which were not a part of the original agreement. The record, however, does not substantiate this position. On May 28, 1968, the agreement for sale between appellant and Mr. and Mrs. Duffy was executed calling for a sale price of $15,000 and $3,000 deposit. On June 4, 1968, the agreement was modified to include the added equipment with the added cost of $1,500. The last sentence of this modification states: "The cost will be added on to our monthly mortgage payments." The $3,000 down payment was made on June 5, 1968, one day after the modification was executed; however, the appellant did not ask for the extra $1,500 until the end of August, 1968. If $1,500 was necessary to cover the cost of the air conditioner and additional items, then likely it would have been paid on June 5, 1968, not approximately three months later.

The testimony shows that the agreement of May 1968, was not conditioned on the requirement that the Duffys use a construction mortgage. No construction sales agreement was ever entered into by the complainant and, when the use of a construction mortgage was demanded, Mrs. Duffy refused to enter the agreement. When Mrs. Duffy advised the appellant that she had a commitment for a conventional mortgage, he refused to honor any agreement to finance the purchase through such a mortgage and would not return her down payment.

The Commission further determined appellant's conduct to be in violation of Sections 10(a)(5)[3] and

---

[3] 63 P.S. §440(a)(5).

10(a)(11)(i)[4] of the Act, to wit, ". . . failure to account for, or to pay over, moneys belonging to others, which has come into his . . . possession arising out of a real estate transaction" and failure to comply with the requirement that "[a]ll deposits or other moneys accepted by every person . . . holding a real estate broker's license . . . must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in the full amount thereof at the time of the consummation or termination."

Here the transaction was not consummated. No house was built and no deed was delivered transferring the property to Mrs. Duffy, although those things were to be done by appellant. Further, the appellant has not returned any money to Mrs. Duffy. The appellant contends that he has accounted for the money that he received, since he paid over $2,800 to the man who had agreed to build the house and retained for himself $1,700 in payment for the property. Appellant asserts that the case of *Trott v. Hild*, 190 Pa. Superior Ct. 85, 151 A. 2d 832 (1959), is authority for and justifies his actions in this case. However, in *Trott* there was a construction sales agreement which expressly disclosed the licensed real estate broker as an agent for a disclosed principal and which provided that the purchasers' payments be paid by the agent to the principal to be used in the course of construction of the home contracted to be built. Here there is no construction sales agreement which authorizes appellant to pay the funds deposited by Mrs. Duffy to anyone. We conclude that *Trott v. Hild, supra,* is inapposite to the fact situation with which we are here confronted.

Finally, the Commission determined that appellant's conduct was in violation of Section 10(a)(7)[5] of the

---

[4] 63 P.S. §440(a)(11)(i.).

[5] 63 P.S. §440(a)(7).

Act, to wit, ". . . any act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty."

Considering the record in its entirety, we conclude, as did the Commission, that the appellant's conduct in connection with the real estate transaction with Mr. and Mrs. Duffy demonstrated at least bad faith. Appellant's request for the additional payment of $1,500 from Mrs. Duffy (which she was not contractually obligated to make), following her husband's death, was in itself, under all of the circumstances in this case, an act of bad faith.

Having reached the conclusion that the adjudication and order were supported by substantial evidence, and that the Commission did not abuse its discretion in the imposition of a penalty of license suspension, we make the following

### ORDER

AND Now, this 10th day of January, 1973, the appeal of Sam Fibus from the order of the State Real Estate Commission, suspending his real estate license for a period of eleven months, is hereby dismissed.