Yingling, Jr. *v.* State Real Estate Commission.

Argued April 2, 1973, before President Judge Bow-MAN and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*James R. McDonald,* with him *William C. Still-wagon,* for appellant.

*Steven Kachmar,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

Opinion by Judge Mencer, May 10, 1973:

This is an appeal from an adjudication and order of the State Real Estate Commission (Commission) revoking the license of the appellant, Herbert V. Yingling, Jr., to practice as a real estate broker.

Appellant was a holder of Real Estate Broker's License No. 20399, issued on August 5, 1963. On April 5, 1965, the appellant purchased property located at 413 Colonial Drive, Monroeville, Allegheny County, Pennsylvania. Appellant entered into a lease agreement with Mr. and Mrs. Warren J. Malisher (complain-

ants), whereby the property at 413 Colonial Drive was leased for a period of one year with an option to the complainants to purchase the property for $23,500.00. At the end of the year's period the complainants were not in a financial position to exercise the option but they continued to reside in the premises on a month to month arrangement.

On December 29, 1966, the appellant and the complainants entered into a written agreement to sell the property and the consideration was set at $23,000.00, with a down payment of $6,500.00. Pursuant to this agreement, the complainants presented a check to appellant for $6,500.00 which he endorsed and the proceeds of which he placed in the account of Hyco, Inc., of which appellant was president.

The agreement of sale provided for a closing or settlement on or before January 31, 1967. Thereafter it was decided to hold the closing on January 26, 1967. Complainants appeared on that date ready and able to settle, having obtained a mortgage loan for $14,700.00 from the Mellon National Bank and Trust Company of Pittsburgh, Pennsylvania (Mellon Bank). Appellant not only failed to appear, but it became known to complainants that there was an outstanding mortgage against the property which had been given by appellant to the Homewood Savings and Loan Association. The attorney for Mellon Bank suggested that they have an escrow closing whereby the complainants would sign all necessary papers and documents and pay their money to be held in escrow awaiting the presentation of a legally sufficient deed and the satisfaction of the outstanding mortgage by the appellant.

After being contacted several times, the appellant mailed to the attorney for Mellon Bank a check dated February 27, 1967, in the amount of $6,500.00 to satisfy the mortgage that remained outstanding, but this check proved to be of no value since, after being deposited, it

was marked "insufficient funds" and returned by the bank on which it had been drawn.

On March 6, 1967, the Mellon Bank notified the complainants of appellant's failure to satisfy the outstanding mortgage, cancelled the mortgage loan to complainants, and returned their money paid at the escrow settlement, less the sum of $345.55 to cover interest costs and fees for survey, appraisal, mortgage preparation, title search and settlement.

Thereafter, complainants contacted appellant and demanded the return of their $6,500.00 down payment and a sum to cover their costs incurred at the escrow settlement but appellant refused to discuss the matter with them. However, subsequently appellant did return to the complainants the sum of $2,500.00. Complainants filed a sworn statement of complaint with the Commission, and an investigation by the Commission failed to disclose that appellant had any escrow records relative to this transaction.

After the issuance of a citation, a hearing was held in accord with Section 10(b) of the Real Estate Brokers License Act (Act),[1] as amended, 63 P.S. §440(b). Appellant did not appear, nor was he represented, at this hearing. After finding that the procedural elements of due process had been met with respect to appellant's rights, the Commission made the following findings of fact:

"  . . .

"4. In April of 1965, the Complainants, Warren and Carole Malisher, entered into a lease-purchase agreement with the Respondent for property located at 413 Colonial Drive, Monroeville, Pennsylvania.

"5. On December 29, 1966, the Malishers entered into a sales agreement with the Respondent for the purchase of said property and at that time the Respon-

---

[1] Act of May 1, 1929, P. L. 1216 as amended, 63 P.S. §431 et seq.

dent agreed to take off $500.00 from the purchase price if the Complainants made a down payment of $6,500.00.

"6. Pursuant to the above agreement, the Complainants delivered to the Respondent on December 29, 1966, a cashier's check for $6,500.00 which was put into the account of Hyco, Inc. instead of that of the Respondent.

"7. At the closing of the purchase of said property, the Respondent failed to appear with the down payment of $6,500.00 causing the cancellation of a mortgage obtained by the Complainants and requiring them to assume Respondent's mortgage on the property which was an amount greater than that of the original mortgage plus back interest.

"8. After repeated request, the Respondent returned $2,500.00 of the $6,500.00 to the Complainants but failed to return the remaining $4,000.00.

"9. Subsequent to said closing, the Respondent sent to Alan Papernick, attorney for Mellon Bank, a check for $6,500.00 to cover the down payment made by the Complainants but this check was returned by the bank because of insufficient funds.

"10. On February 8, 1971, Thomas Scott, an investigator for the Commission of Professional Licensing, made an inspection of Respondent's real estate office and after requesting to see the Respondent's escrow records was told that they were in the hands of a bookkeeper.

"11. On February 22, 1971, Mr. Scott made a subsequent inspection of the Respondent's office and after making a request to see his escrow records, he was told that they were in an accountant's hands even though Respondent knew this visit would be made for the purpose of seeing the records."

We find, after an examination of the record, that these findings are supported by substantial evidence.

The Commission's first conclusion of law was that it had jurisdiction. Appellant in this appeal contends

that the Commission was in error relative to this conclusion of law since he was selling property that he owned and therefore was not acting as a broker under the Act. This same contention was rejected by us in *Fibus v. State Real Estate Commission,* 7 Pa. Commonwealth Ct. 74, 299 A. 2d 375 (1973), where we followed *State Real Estate Commission v. Tice,* 200 Pa. Superior Ct. 553, 190 A. 2d 188 (1963), and held that a broker's license may be suspended or revoked for misconduct occurring in a real estate transaction when the broker is acting for himself, as well as when he acts for others. We are not persuaded that we should abandon *Fibus* and therefore we hold that the Commission did have jurisdiction here.

We will now consider separately the violations of the Real Estate Brokers License Act of which the Commission determined appellant to be guilty by his conduct.

In the adjudication, appellant's conduct was held to be in violation of Sections 10(a)(1)[2] and 10(a)(2)[3] of the Act, to wit, ". . . knowingly making . . . substantial misrepresentation" and "knowingly making . . . false promise of a character likely to influence, persuade or induce."

Appellant, at the time the agreement of sale was executed and upon accepting the $6,500.00 down payment from the complainants, did represent that settlement would be made on or before January 31, 1967 and that at the time of settlement he would deliver a general warranty deed to convey the 413 Colonial Drive property, clear of all encumbrances, to the complainants. There can be no doubt that such representation was substantial and was not honored by appellant. More important, appellant did not disclose to complainants the existence of the outstanding mortgage on the prop-

[2] 63 P.S. §440(a)(1).
[3] 63 P.S. §440(a)(2).

erty and did not apply the $6,500.00 down payment to the mortgage. We must conclude that the Commission's adjudication relative to violations by appellant of Sections 10(a)(1) and 10(a)(2) is correct.

The Commission further determined appellant's conduct to be in violation of Sections 10(a)(5)[4] and 10(a)(7)[5] of the Act, to wit, ". . . failure to account for, or to pay over, moneys belonging to others, which has come into his . . . possession arising out of a real estate transaction" and ". . . act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty." Here appellant accepted a down payment of $6,500.00 for which he accounted or of which he paid over but $2,500.00. All of these happenings were directly involved in a real estate transaction and we have no difficulty in concluding, as did the Commission, that it was conduct that, if not dishonest, demonstrated incompetency. This conclusion is fortified by consideration of the appellant's bad check given February 27, 1967.

Finally, the Commission determined that appellant's conduct was in violation of Sections 10(a)(11)(i),[6] 10(a)(11)(iii),[7] 10(a)(11)(iv),[8] and 10(a)(11)(v)[9] of the Act as they pertain to the statutory duty of a real estate broker to deposit and account for all moneys pending the consummation or termination of the real estate transaction; the prohibition of commingling funds of another with the broker's; the maintaining of a separate custodial or trust fund account and the prohibition against depositing or commingling advance payments in the broker's business or personal account

---

[4] 63 P.S. §440(a)(5).

[5] 63 P.S. §440(a)(7).

[6] 63 P.S. §440(a)(11)(i).

[7] 63 P.S. §440(a)(11)(iii).

[8] 63 P.S. §440(a)(11)(iv).

[9] 63 P.S. §440(a)(11)(v).

or with his own funds; and the keeping of required records relative to such trust funds.

Here appellant failed to comply with these statutory requirements, as the Commission's investigation disclosed, and the record supports the Commission's adjudication in regard to violations of these sections of the Act. Appellant endorsed the $6,500.00 check from the complainants and deposited these funds to a business account of a "Hyco, Inc." of which he was president. Appellant was unable, when investigated by the Commission, to produce any records of the transaction.

Therefore, having reached the conclusion that the Commission's adjudication and order were supported by substantial evidence, and that the Commission did not abuse its discretion in the imposition of a penalty of license revocation, we make the following

ORDER

AND NOW, this 10th day of May, 1973, the appeal of Herbert V. Yingling from the order of the State Real Estate Commission, revoking his Real Estate Broker's License No. 20399, is hereby dismissed.