[J-51-2017] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| SHANNON MCGRATH, | : | No. 5 WAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered August |
| | : | 24, 2016 at No. 1001 CD 2015, |
| v. | : | affirming in part and reversing in part |
| | : | the Order of the Bureau of Professional |
| | : | and Occupational Affairs entered April |
| BUREAU OF PROFESSIONAL AND | : | 10, 2015 at No. 1393-51-13. |
| OCCUPATIONAL AFFAIRS, STATE | : | |
| BOARD OF NURSING, | : | SUBMITTED: May 2, 2017 |
| | : | |
| Appellant | : | |

**CONCURRING OPINION**

**JUSTICE WECHT**                                              **DECIDED: November 22, 2017**

I agree with the learned Majority's determination that the Commonwealth Court ruled correctly in this case. The Board of Nursing has discretion under the Professional Nursing Law[1] to "reissue" Shannon McGrath's nursing license in the wake of an automatic suspension imposed under 63 P.S. § 225.1(b), provided that a majority of the Board determines that such action is appropriate and the Board acts consistently with its duly issued regulations. *See* 63 P.S. § 225. I concur as well in much of the textual analysis that leads the Majority to its conclusion.

Nonetheless, I am unpersuaded by the final portion of the Majority's analysis, which depends upon a finely-drawn distinction between "automatic suspensions"

---

[1]     Act of May 22, 1951, P.L. 317, No. 69, § 1, *codified as amended* 63 P.S. §§ 211, *et seq.*

specifically and "suspensions" generally so as to shield the automatic suspensions from the statute's preceding use of "hereinafter." I believe that this is more weight than the distinction can bear. In my view, the textual difficulties can be resolved only by means of our canons of construction.

Like the Commonwealth Court, I perceive the relevant provisions of the law to be intractable, and, as such, in need of statutory construction. Moreover, faced with a set of statutory provisions that so stubbornly defy harmonization, I find many of the canons of statutory construction to be of little benefit, not least because there is no clear way to resolve the conflict that does not entail materially modifying or adding to one or more of the competing provisions. Like the Commonwealth Court, I would rely upon the rule of lenity, which requires interpretation of these ambiguous penal provisions in the manner most favorable to McGrath.[2] Here, the General Assembly has confronted the Board with an interpretive dilemma, forcing the latter to choose between subjecting McGrath's license to a mandatory ten-year suspension that application of Sections 225.1 and 225.2 arguably require or giving the Board the option to reissue her license in its discretion at any time under Section 225. In my view, the rule of lenity compels the Board to choose the latter alternative, thereby recognizing its discretion to reissue McGrath's license. This approach, like the Majority's, requires affirmance of the Commonwealth Court's ruling.

Pennsylvania courts, including this one, long have applied the rule of lenity in resolving ambiguities in laws deemed penal. We have made clear that a statute

---

[2] *See McGrath v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, 146 A.3d 310, 321-22 (Pa. Cmwlth. 2016); *see also* 1 Pa.C.S. § 1928(b) ("All provisions of a statute of the classes hereafter enumerated shall be strictly construed: . . . (1) Penal provisions.").

providing for the suspension or revocation of a professional license is such a statute.[3]

The Commonwealth Court has explained the principle aptly as follows:

> Ambiguities should and will be construed against the government. This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be. Application of the rule of lenity extends beyond the context of criminal statutes.

*Harmer v. Pa. Bd. of Prob. & Parole*, 83 A.3d 293, 300 (Pa. Cmwlth. 2014) (quoting *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 600 (Pa. Cmwlth. 2011) (*en banc*)). In short, "where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." *Commonwealth v. Brown*, 981 A.2d 893, 898 (Pa. 2009) (quoting *Commonwealth v. Booth*, 766 A.2d 843, 846 (Pa. 2001)).

In the instant matter, the Commonwealth Court, exploring the same territory as the Majority, and encountering many of the same interpretive obstacles, found ambiguous the statutory scheme read as a whole. In a nutshell—and none of this is

---

[3] *See, e.g., Pa. State Real Estate Comm'n v. Keller*, 165 A.2d 79, 80 (Pa. 1960) (citing *Trott v. Hild*, 151 A.2d 832 (Pa. Super. 1959), for the proposition that the Real Estate Broker's Law in authorizing the suspension or revocation of a broker's license is penal and subject to strict construction in favor of the licensee); *Commercial Banking Corp. v. Freeman*, 46 A.2d 233, 235 (Pa. 1946) (same concerning civil sanctions under the Banking Code). *But see Verona v. Schenley Farms Co.*, 167 A. 317, 320 (Pa. 1933) ("[T]here is no impropriety in putting a literal construction on a penal clause, and a liberal construction on a remedial clause in the same statute. In considering its meaning, it is also important to note that the requirement of the license is in aid of the collection of the revenue payable by brokers pursuant to the act of 1907 . . . . It is settled that statutes to prevent frauds upon the revenue are considered as enacted for the public good, and to suppress a public wrong, and therefore although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature." (internal quotation marks and citations omitted)).

inconsistent with the Majority's analysis—the court noted that Sections 225 through 225.2 consistently distinguish between a license suspension and a license revocation. Section 225 takes care to delineate the process by which a suspended license may be reissued, while indicating that a license that has been *revoked* may be restored only pursuant to the requirements of Section 225.2. However, this relatively straightforward dichotomy is compromised by Subsection 225.1(b), which, concerning *automatic* suspensions like McGrath's, provides that "[r]estoration of such license"—and here I see no way to interpret "such license" except as one that has been automatically suspended as provided in that very subsection—"*shall be made as hereinafter provided* in the case of revocation *or suspension* of such license." 63 P.S. § 225.1(b). There is, of course, only one relevant provision that appears *thereinafter*, and that is Section 225.2.

And there's the rub. By its terms, Section 225.2 prescribes restoration only of licenses "which have been revoked." In no way, express or implied, does Section 225.2 address suspensions in themselves or the restoration of suspended licenses, as such. To read the statutory scheme as the Board does would force us to add language concerning *suspended* licenses to Section 225.2 that simply is not there. Conversely, to resolve the matter in McGrath's favor in a purely textual fashion would require us effectively to delete "hereinafter." As the Commonwealth Court correctly noted, we may do neither. *See McGrath*, 146 A.3d at 320-21; *accord Burke ex. rel. Burke v. Independence Blue Cross*, 103 A.3d 1267, 1274 (Pa. 2014). Instead, the Commonwealth Court turned to the rule of lenity, resolving the intractable textual conflict in favor of Ms. McGrath.

The Majority resolves this difficulty semantically. The problematic sentence in Subsection 225.1(b) begins, "[r]estoration of *such license*" in a context in which "such license" can only be interpreted as referring to a license automatically suspended under

that subsection. However, the same sentence continues "shall be made as hereinafter provided in the case of revocation or suspension of *such license.*" The second usage of "such license" suggests that the license in question may be revoked *or* suspended, despite the fact that the first usage of "such license" refers to a license that has been suspended automatically. The Majority concludes that the second reference, despite using the same words, refers to the broader category of suspended licenses, including those suspended not automatically but by affirmative Board action as provided for in Sections 224 and 225, and further concludes that defining the second usage differently than the first resolves the facial difficulties afflicting these sections. *See generally* Maj. Op. at 9-13.[4]

I am unpersuaded. In my view, the Majority's grammatical basis for this reading, which requires one to read two usages of the same phrase in the same sentence of a statute as having distinct meanings, remains unclear. Moreover, nothing in that analysis provides a clear account as to why "hereinafter" as used in Subsection 225.1(b) should be read as modifying only one of the two items that follow it. I discern no tidy way to reconcile the two consecutive uses of "such license" or to resolve the other textual irregularities identified above and at greater length by the Commonwealth Court. Thus, I would adopt the Commonwealth Court's reliance upon the rule of lenity to reduce these unfortunately-worded provisions to a fair, manageable standard. I would affirm the court's ruling on that basis.

---

[4]     The Majority expounds upon its approach at considerable length, and fortifies it with a thoughtful exegesis of the statute's history, including an examination of the predecessor provision to Section 225.1, formerly found at 63 P.S. § 226.1. My brief treatment does not do the analysis full justice, but the linguistic complexity that the Majority's discussion requires reinforces my belief that the relevant provisions are irreconcilable, and hence ambiguous. The General Assembly can bring an end to our jurisprudential gymnastics by clarifying the statutory language.