## Clark & Co. *versus* Bank of Wheeling.

1. It is the duty of an agent to give to his principal timely notice of every fact or circumstance which may render it necessary for him to take measures for his security; and an agent for the investment and transmission of money is liable for every default of his sub-agent which occurs during the period in which he kept his principal in ignorance of the destination of a draft purchased by him on account of his principal.

2. A firm *in New Orleans* received from, and as the agent of a bank, paper payable in that place, with instructions to invest the proceeds in bills payable in New York or Philadelphia. They invested a portion of them in the purchase of a draft on persons in New York, and forwarded it to a house there for collection, but *through mistake* advised the bank that they had transmitted it to a firm *in Philadelphia*. On the day of the receipt of the letter, the bank drew on the Philadelphia firm, for a part of the amount of the draft, with directions to sell the draft alleged to have been received by them. *Subsequently*, the bank received from the New York firm an acknowledgment of the receipt of the draft from New Orleans, *and on the same day* the bank drew on the New York firm for nearly the amount of the draft; but before the date of that letter, the New York firm had stopped payment.

It was *held*, that the New Orleans firm were liable to the bank for the amount of the draft in dispute.

ERROR to the District Court, *Philadelphia*.

This was an action by the Merchants' and Mechanics' Bank of Wheeling against E. W. Clark & Brothers and Farnum, of New Orleans, for the amount of a bill of exchange purchased by the latter with the funds of the bank, and at its instance. The bank made remittances to the said firm at New Orleans, with directions to convert the same into bills on New York or Philadelphia. The defendants purchased a bill on Spafford, Tillotson & Co. of New York, at sixty days, for $3098.77, and on the 26th April, 1845, they remitted it to John T. Smith & Co., of New York. Instead of informing the bank of the remittance to Smith & Co., they, through mistake, wrote to the bank that the bill had been remitted to *E. W. Clark & Co.*, of Philadelphia. This letter was received by the bank in due course of mail, on the 8th May; and on the same day the bank drew on Clark & Co. at sight for $2500, and wrote to them in relation to it. Clark & Co. were not in possession of funds of the bank, but they paid the bill for the honor of the drawers, on the day on which it was presented, and on the same day Clark & Co. wrote to the bank on the subject. The letter of Clark & Co. was received by the bank on the 16th May, and on the same day the bank replied, stating the information received by them from New Orleans of the bill having been forwarded to Clark & Co., and the second bill was enclosed. On the day following, viz. on the 17th of May, the bank received a letter from Smith & Co., of the 12th of that month, informing them of the receipt by the latter of the draft in question, and

[Clark & Co. *v.* Bank of Wheeling.]

that they had contracted to dispose of it, as well as of a larger sum belonging to the plaintiffs, and which they had received before. This was the first information the bank had received of the transmission of the draft to Smith & Co. On the same day the bank wrote to Smith & Co., and drew a bill on them for $3000, which was never paid. Before the 16th May, Smith & Co. had received the money for the bill transmitted to them by Clark, Brothers & Farnum; and on the 16th May, Smith & Co. were insolvent.

A case was stated, in which the amount was agreed upon in case of plaintiff being entitled to judgment. The case was argued before STROUD, J., who observed, *inter alia*, that the liability of the defendants was unquestionable; that information was not given to the bank that the bill had been sent to Smith & Co. until the conversion of the money by the latter; and that the plaintiff (the bank), in writing to Smith & Co. on the 17th May, did not relieve the defendants from their previous liability, the loss of the money being complete before the 16th of that month. Of the insolvency of Smith & Co. the bank, at the date of their letter, were ignorant; and that, being without full knowledge of the important facts, there was no ratification of the agency of Smith & Co. in the matter: Owings *v.* Hull, 9 *Peters* 629; Culver *v.* Ashley, 19 *Pickering* 300; and other cases cited in *Hare & Wallace's American Leading Cases* 421.

Judgment was entered for the plaintiff, the bank.

A writ of error was sued out on the part of defendants, and it was assigned for error, "That the court erred in entering judgment for the plaintiff upon the case stated."

*Badger*, for plaintiffs in error, *inter alia*, contended that both the plaintiffs in error and defendants were, in respect of their knowledge of J. T. Smith & Co., on the same footing; they believed them perfectly solvent.

The bank had been advised by E. W. Clark & Co., of Philadelphia, on the 12th of May, that possibly the draft had been remitted to J. T. Smith & Co. This had been done promptly by them, on the very day that the check for $2500 was presented and paid by them for the honor of the drawer, and without funds of the bank in their hands at the time. This was the first notice received by the bank, May the 16th. The next day, May 17th, the bank received from their agents, J. T. Smith & Co., an acknowledgment of the receipt by them of the bill in question, and immediately drew a bill against it for $3000 on them, in favor of E. W. Clark & Co., to reimburse them for their advance in paying their check of $2500. This draft was protested for non-payment, and the bank afterwards paid E. W. Clark & Co. their advance; *when*, does not appear. It is manifest that the principal, the bank, had

here full knowledge of the omission of their agents, J. T. Smith & Co., to give the requisite notice. Their duty, then, was an obvious one. If they meant to hold their agents at New Orleans, E. W. Clark, Brothers, & Farnum, the plaintiffs in error, responsible to them for any loss consequent upon their defective notice or mis-advice, they should have given them immediate notice thereof. But instead of doing that, they avail themselves of the very fact which it is now alleged their agents at New Orleans defectively did. They drew on J. T. Smith & Co., their agents at New York, without notice to their agents at New Orleans, that they would hold them liable. They did not even intimate dissatisfaction until the 30th of May, and they did not make a distinct and positive demand until the 30th of July following. This, it is respectfully submitted, is an affirmance of the acts of their agent—a ratification of them, and a complete waiver of their claim against them, if indeed they ever had a claim: *Story on Agency* ch. 9, sec. 239, 253, 258; 14 *Ser. & R.* 27; Brewer *v.* Sparrow, 1 *Man. & Ryl.* 7.

*Finally.*—When the defective notice was received, then the bank was bound to reject the remittance, and to hold the agents to their liability, if they meant to do so at all. Not doing this, but drawing a bill for the amount of the remittance on J. T. Smith & Co., they waived the omission of proper notice, and ratified the remittance.

*Bayard* and *Williams* for the bank.—The negligence of the defendants below, for which the action was brought, consisted in their giving wrong information as to the remission of the bill of exchange, in consequence of which the plaintiffs lost the amount of it. That it was the duty of agents to give their principal correct information of their transactions, and especially so when anything is to be done by the principal: *Story on Agencies*, sec. 208; *Paley on Agency* 38–9; 3 *Chitty's Com. Law* 219; 4 *Rawle* 229.

If the act of the defendants below was the proximate cause of the loss, they are liable: *Russell on Brokers and Factors* 275; 48 *Law Lib.* 173–4; 9 *Barr* 148–50, Forsythe *v.* Walker. The bank had no reason to complain of the remittance of the bill to Smith & Co.; it was the erroneous advice of their agents which was complained of.

The bank was not bound to act until it obtained the information which would enable it to act understandingly: 3 *Harris* 229–235, Porter *v.* Patterson. There can be no binding ratification without full knowledge: 1 *Hare & Wallace's Amer. Leading Cases* 593.

The opinion of the court was delivered February 2, by

Lewis, J.—It is an agent's imperative duty to give his principal timely notice of every fact or circumstance which may make it

[Clark & Co. *v.* Bank of Wheeling.]

necessary for him to take measures for his security: *Paley* 38; Devall *v.* Burbridge, 4 *W. & Ser.* 306. And if, by his neglect to do this, the principal has suffered a loss, he is entitled to be indemnified by the agent: Brown *v.* Arrott, 6 *W. & Ser.* 416. In a case of this kind Mr. Justice KENNEDY considers it just and reasonable that the agent "should be held responsible *for any loss that has happened, which possibly might have been avoided, had he only performed his duty to the principal as his agent.*" And where goods or funds are placed by the agent in the hands of a sub-agent, and the former is guilty of gross negligence (in withholding information), the same careful and considerate judge was of opinion that it "would not be going too far to hold that the agent, by his conduct, had impliedly agreed to be answerable for any loss that should arise from the default of his sub-agent:" Brown *v.* Arrott, 6 *W. & Ser.* 421.

If these principles be correct in the case of an ordinary agent for the sale of goods, their application to an agency like the one before us (for purchasing and remitting drafts on Philadelphia and New York, on account of a bank in the interior) is demanded by the true interests of trade, and the urgent necessities of financial credit. And if a measure of liability so stringent as that just indicated be appropriate, where there is only a *non-feasance,* how just and necessary is its application to an act of positive *malfeasance.* In the use of that term, as applicable to the conduct of the defendants, we are far from imputing to them an intention to deceive or otherwise to wrong the plaintiff. But it was their duty to give information *immediately* and *accurately,* of the destination of the bill of exchange which had been purchased with the funds of the plaintiff; and the statement that it had been sent to *E. W. Clark & Co.* of *Philadelphia* (when in fact it had been forwarded to *John T. Smith & Co. of New York*), was such a misrepresentation of a material fact as fully authorized the plaintiff to consider the funds still in the hands of the defendants; or in other words, to hold them liable for all loss occasioned by the default of John T. Smith & Co. Until the plaintiff was advised of the remittance of the draft to Smith & Co., the insolvency and default of the latter stood at the risk of the agent, whose gross neglect and positive misstatement of the facts had deprived the bank of all power to protect its own interest. The vigilance of the plaintiff, in drawing upon Clark & Co. for the proceeds the moment information was received that the draft was in their hands, and afterwards in drawing on J. T. Smith & Co. the instant that advice was received that the draft had in fact been sent to the latter, shows that the money would not have been lost by inattention on the part of the bank, had it been correctly advised at the time the bill was remitted to Smith & Co. The immediate direction to sell the draft in the one case, and the

2 E

[Clark & Co. *v.* Bank of Wheeling.]

prompt disposition of it in the other without special direction, show that it was not in the contemplation of any of the parties to the transaction, to permit drafts (purchased for the purpose of providing the bank with eastern funds) to remain undisposed of until they ran to maturity.

It cannot be doubted, from the nature of the business in which the parties were engaged, the financial demands upon the bank created by the course of trade, and its prompt action in the employment of its eastern funds, that Smith & Co. would have been drawn upon immediately for the proceeds of the draft, if correct information had been given with respect to its destination. And the agent whose neglect has deprived the plaintiff of all the means of self-protection, cannot be permitted to defend upon a mere peradventure. It was *possible*, but we cannot see that it was *probable* that Smith & Co. would have failed at an earlier day if the bank had received correct information, and had drawn for the proceeds of the draft. Such a conjecture, however, is not sufficient to relieve the defendants from their positive liability, created by their contract of agency and the clear breach of that engagement. The vendor of a horse, who receives the consideration and engages to deliver it to the agent of the purchaser by a particular day, cannot relieve himself from liability by the suggestion that the vendee has not shown that his damage was the *direct* and *proximate consequence* of the breach of contract. A suggestion that the vendee's agent might have become insolvent, or the horse have died in his hands, would be no answer to an action against the vendor. But in this case the defendants are liable for every default of their sub-agents, which occurred during the period in which they kept their principal in ignorance of the true destination of the draft. And as the failure of Smith & Co. occurred the day before the bank received information that the draft had been sent to them, the defendants are justly responsible for its value.

The draft of the 17th May, on J. T. Smith & Co., was sent before the failure of the latter was known to the bank, and does not amount to a release of the cause of action then existing against defendants.

We perceive no error in the opinion of the learned judge of the District Court, and the judgment is therefore affirmed.

Judgment affirmed.

LOWRIE, J., dissented.