State Real Estate Commission *v.* Joseph Farkas.

Argued January 5, 1971, before Judges KRAMER, MENCER and ROGERS, sitting as a panel of three.

*Isidor Ostroff,* with him *Ostroff & Lawler,* for appellant.

*Stephen Kachmar,* Commission Counsel, with him *John P. Fernsler,* Deputy Attorney General, and *Fred Speaker,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, January 25, 1971:

This is an appeal from an adjudication and order of the State Real Estate Commission revoking the license of the appellant, Joseph Farkas, to practice as a real estate broker.

In June 1966 Christine Johnson called on appellant in answer to an advertisement in a Phoenixville newspaper by which appellant offered a house for sale. Appellant told Mrs. Johnson that the house would be sold to her on the following terms: "I told [her] we were selling that house with a 500 dollar payment on the purchase price, and then we would charge [her] 75 dollars a month for one year, and during the course of that year the 75 dollars would be applied as rent, and anything over and above the expenses would be applied toward the purchase price after one year. After the one year we would try to get you a mortgage at the Building and Loan."

Mrs. Johnson paid the appellant $375 on June 6, 1966, and he furnished her a receipt on which he wrote, "$300 deposit on house 122 St. Mary plus rent $75 6/6-7/6/66." On June 30, 1966, she paid appellant $200 and was given a receipt on which appellant wrote: "122 St. Mary's total paid on account $500 towards purchase." Neither an agreement of sale nor a lease was prepared. Mrs. Johnson made payments to appellant of $75 in each of the months of July, August, September and October of 1966.

In June of 1966, the St. Mary's street property was owned by the appellant and an Irving Ostroff. Ostroff had left the management of the property entirely to the appellant. The appellant did not tell Ostroff of his dealings with Mrs. Johnson and did not pay over or account to Ostroff for any of the moneys received from her. The record title to the property was in Ostroff alone. A local Savings and Loan Association held a

$5,000 mortgage calling for monthly payments of fifty dollars. The Savings and Loan dealt exclusively with appellant. No payments had been made on the mortgage since September 1965. In November, 1966, the Association went into possession under the mortgage, acquired title and thereafter sold the property and an adjoining house to Mrs. Johnson for $5,500.

Mrs. Johnson attempted to recover her money but was unable to find appellant. In early 1969, a lawyer questioned appellant about his obligation to Mrs. Johnson. Mrs. Johnson's complaint which commenced this action was made with the assistance of the Community Action Board.

The appellant's explanation of his conduct is that in 1966 he was in deep financial difficulties and that in September of that year the Internal Revenue Service levied on his bank accounts and appropriated any funds to his tax deficiencies. He claims that one such account was an escrow account. Appellant admits that he made no effort to protect any person's money in that account. When investigated by the Real Estate Commission in March 1969, appellant had no file of the Johnson transaction, no records of an escrow account, no deposit slips for Mrs. Johnson's money and "didn't know where anything was."

Appellant returned $600 to Mrs. Johnson after the Real Estate Commission's hearing in this matter.

The Commission found:

"9. Respondent neither prepared nor gave complainant an agreement covering the sale.

10. Respondent admitted receiving the money and owing this money to complainant.

11. Respondent permitted a levy by Internal Revenue Service for Federal income taxes to be made upon his escrow account in which funds held for the account and benefit of complainant as well as others were maintained.

12. Respondent did not have records of his transaction with complainant.

13. Respondent did not advise complainant of the levy on his escrow account. . .

14. Respondent did not keep records of his real estate transactions.

15. Respondent failed to account for the money received by him nor did he return said money to her."

These findings are supported by substantial evidence.

The Commission concluded that the appellant was guilty of a number of offenses described in the Real Estate Brokers License Act of 1929, May 1, P. L. 1216, as amended, 63 P.S. 431. We will comment on these separately:

Section 10(a)(5), 63 P.S. 440(a)(5). "Of any failure to account for, or to pay over, moneys belonging to others, which has come into his possession . . . arising out of a real estate transaction."

Appellant had Mrs. Johnson's money in June 1966. In November 1966, the property involved came into the possession and control of the Savings and Loan Association. The money had not been accounted for or paid over at the time of the Commission's hearing in September 1969.

Section 10(a)(7). "Of any act or conduct in connection with a real estate transaction which demonstrates incompetence, bad faith or dishonesty."

Appellant explains his failure to return Mrs. Johnson's money by asserting that his bank accounts were levied upon and taken by the Internal Revenue Service. He states he maintained an escrow account but admits he made no effort to prevent its being taken in partial satisfaction of his obligation to the United States Government. He testified "I suppose it was panic, trying to cover this lien by the government." Further, the

appellant failed to apply any part of the total of $800 paid him by Mrs. Johnson to the mortgage on the property which mortgage was nine months in default when he took her money. Incompetency is manifest and there is more than a suspicion of bad faith.

Section 10(a)(9). "Of failing to furnish voluntarily a copy of the agreement of sale to the buyer and the seller, and a copy of the lease to the lessor and lessee."

That no agreement or lease was furnished Mrs. Johnson is admitted. She was not required to request one. This section of the Act ". . . requires the broker to voluntarily furnish an agreement of sale and a reasonable interpretation of this statutory provision would be to place a duty of affirmative action on the part of the broker." *State Real Estate Commission v. Carroll*, 85 Dauphin 223, 228 (1966).

Section 10(a)(11)(i): "All deposits . . . must be retained by such real estate broker pending consummation or termination of the transaction involved, and shall be accounted for in the full amount thereof at the time of the consummation or termination."

If, as he states, appellant placed Mrs. Johnson's money in an escrow account, properly identified as the Real Estate Brokers License Law requires, he did nothing to retain it there. He failed to tell Mrs. Johnson that her money was about to be appropriated to his obligation and he failed to take any action to prevent execution on the escrow funds. By Section 6343 of the Internal Revenue Code of 1954, 26 U.S.C.A. 6343 and Regulation 301.6343-1 the District Director is empowered to release a wrongful levy at any time. Further, if as appellant states, one of his accounts was indeed properly identified as containing funds of others, the action of the bank in paying over to the Service may have made it liable to the cestuis qui trustent. Would

the bank have paid over such funds properly identified? *See United States v. Emigrant Industrial Savings Bank,* 122 F. Supp. 547 (1954). Appellant's testimony in regard to this levy is revealing: "Q. Did you try to explain to the Internal Revenue Service that the escrow funds were kept for the benefit of certain clients of yours and should be treated as their money, rather than your money? A. I believe they said at the time that if I had reason to prove it was other people's money I should go ahead and get an attorney. But in talking with some attorneys they told me to try to give them the money. I wrote checks and they started to bounce, because the account was impounded . . . Q. You are not answering my question. Did you not explain to the people in the IRS that this escrow money was not your money? A. Yes I did. Q. Did you try to resist their efforts to levy on that money? A. I had no resistance at all, because they made the attachment on it. Q. Did you try to show them that some of the money, for example, belonged to Mrs. Johnson? A. They said they didn't know anything about it. Q. Did you show them records or copies of deposit slips? A. They didn't ask for them. Q. Did you make any effort to see Mrs. Johnson? A. No, none at all. Q. Did you make any effort to try to have her protect her own five hundred dollars, by advising her of this levy? A. No, because I had other people involved at the time too, in my escrow account, and I was taking each one as they came forth. Q. Did you advise anybody whose money was in your escrow account that they could go to the Internal Revenue Service? A. No, I was not advised of that. Q. . . . . Did you advise any of the people who had money in your escrow account that they could possibly go to the IRS with their receipts and records and show that the money that was levied on was their money? A. No, I didn't. Q. Will you explain why you

did not do it? A. I suppose it was panic, trying to cover this levy by the government."

The conclusion that appellant failed to retain this deposit is supported by this testimony. It is not unfair to infer that appellant was not greatly distressed by Mrs. Johnson's deposit being used to pay his tax deficiencies.

Section 10(a)(11)(iii) and (iv): These sections prohibit the commingling of principals' funds with personal money and require the deposit of principals' funds in separate custodial or trust fund accounts.

The appellant has excepted to the conclusion that he violated these provisions. The Commission did not find as a fact either that the appellant had commingled Mrs. Johnson's deposit with his own funds or that he failed to deposit her money in a separate custodial or trust fund account. The Commission's conclusion that appellant commingled is based upon his failure to contest the IRS levy on his escrow account or to notify Mrs. Johnson that it had been levied on. Such construction of the word commingled is liberal in the extreme and unwarranted with reference to this penal statute. *Pennsylvania State Real Estate Commission v. Keller,* 401 Pa. 454, 165 A. 2d 79 (1960); *G. J. Mc-Williams, Inc. v. Brittingham,* 38 D. & C. 2d 342 (1965). Indeed the Commission's findings of fact concede the existence of an escrow account and such finding is supported by appellant's testimony, if not by the apparent ease with which the Service obtained the funds. *See United States v. Emigrant Industrial Savings Bank, supra.* The exceptions to the Commission's conclusion that appellant violated Sections 10(a)(11) (iii) and (iv) must be sustained.

Section 10(a)(11)(v). "Every real estate broker shall keep records of all funds deposited therein, which records shall indicate clearly the date and from whom

he received money, the date deposited, the dates of withdrawals, and other pertinent information concerning the transaction, and shall show clearly for whose account the money is deposited and to whom the money belongs. All such records and funds shall be subject to inspection by the Commission. Such separate custodial or trust fund account shall designate the real estate broker, as trustee, and such account must provide for withdrawal of funds without persons notice."

As noted, the appellant had no records whatsoever of his transaction with Mrs. Johnson, much less any record of deposits in his escrow account: "Q. Did you keep escrow records, Mr. Farkas? A. I kept escrow records on folders. If they were sales transactions they were kept on the folder. Q. Do you have those records with you? A. No, I don't. Q. You were subpoenaed to bring those records were you not? A. Yes, but all my records are now in chaos. Q. Did you save any records as they pertained to the property at 122 St. Mary's Street? A. None pertaining to Christine Johnson, no. Q. Did you have any records pertaining to her? A. With Mrs. Johnson, no."

Hence, of the five conclusions made by the Commission four are clearly supported by substantial evidence. One, finding a violation of subsections (a) (11) (iii) and (a) (11) (iv) of Section 10, 63 P.S. 440 (a) (11) (iii) and (iv) is not. Nevertheless, considering that the purpose of the statute here is to protect the public (*Young, Appellant v. Department of Public Instruction*, 105 Pa. Superior Ct. 153, 160 A. 151 (1932) ), and being mindful of the seriousness of the violations found to have been committed, we must decline appellant's request that we modify the order of the Commission. Judge BOWMAN's comments in *State Real Estate Commission v. Evers*, 89 Dauphin 158, 163 (1968) are altogether apposite here. "We have found that six of the

eight conclusions of law reached by the Commission were supported by substantial evidence, and more importantly that all six of said conclusions are supported by substantial evidence showing appellant to have been flagrantly guilty of violating several provisions of the Real Estate Brokers License Act . . . The two legal conclusions which we have found to be unsupportable by substantial evidence have only relative significance to the more serious violations which the Commission has found to exist . . ."

To modify this order would be to substitute our discretion for that of the Commission, which we may not do.

Appellant has argued that he did not intelligently waive his right to counsel at the administrative hearing and that therefore the proceedings lacked due process. The hearing opened with the following testimony: "Q. Mr. Farkas, I show you Exhibit C-2, the sworn statement of complaint, and ask you whether you received a copy of that? A. Yes. Q. Would you also indicate whether you made an answer to this complaint? A. Yes, I gave it to your investigator. Q. Did you read the Citation and Notice of Hearing? A. Yes, I did. Q. Are you familiar with the charges contained therein? A. Yes, I am. Q. Are you aware that by reason of this hearing your license as a real estate broker is in jeopardy? A. I understand that. Q. I am telling you, Mr. Farkas, that you have the right to have legal counsel represent you. Inasmuch as your license as a real estate broker is in jeopardy, do you want an opportunity to retain counsel to represent you in connection with these charges? A. No. Q. Are you satisfied that this hearing proceed without counsel representing you? A. Yes, I am."

Appellant's counsel in brief and argument has asserted that appellant went forward without counsel

because he believed that if he repaid Mrs. Johnson his license would not be revoked. We do not doubt that counsel makes this assertion sincerely and without motive of imposture. It is not, however, supported by the record. Appellant's casual attitude toward his hearing was perfectly consistent with his insouciant treatment of Mrs. Johnson and her money.

Having concluded that the adjudication and order was supported by substantial evidence and that the Commission did not abuse its discretion in the imposition of a penalty of license revocation, we make the following

### ORDER

AND NOW, this 25 day of January, 1971, the appeal of Joseph Farkas from the adjudication of the State Real Estate Commission revoking his real estate broker's license is hereby dismissed.