Alfred C. Moore, t/a Key State Real Estate Co., Inc., Appellant, *v.* Commonwealth of Pennsylvania, State Real Estate Commission, Appellee.

Argued June 4, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Norman M. Yoffe,* with him *Robert A. Enders,* for appellant.

*Steven Kachmar,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, August 8, 1973:

Alfred C. Moore, who conducts a real estate business as Key State Real Estate Co., Inc., a corporation owned by him, appeals from the action of the State Real Estate Commission suspending his broker's license for 60 days.

Mr. Moore was charged with "knowingly making [a] substantial misrepresentation,"[1] or "knowingly making [a] false promise of a character likely to influence, persuade or induce,"[2] or engaging in "a continued or flagrant course of misrepresentation, or [of making a] false promise through agents or salesmen,"[3] or of failing "to account for, or to pay over, moneys belonging to others,"[4] or of engaging in an "act or conduct in connection with a real estate transaction which

---

[1] This conduct (and those following) being the occasion for the suspension or revocation of a broker's or salesman's license, Section 10(a)(1) of the Real Estate Brokers License Act, Act of one thousand nine hundred and twenty nine, Act of May 1, 1929, P. L. 1216, as amended, 63 P.S. §440(a)(1).

[2] Section 10(a)(2), 63 P.S. §440(a)(2).

[3] Section 10(a)(3), 63 P.S. §440(a)(3).

[4] Section 10(a)(5), 63 P.S. §440(a)(5).

demonstrates incompetency, bad faith, or dishonesty."[5] After hearing, the Commission concluded that the appellant had been guilty of "making misrepresentations through his salesmen," of failing to account for and paying over money and of conduct demonstrating bad faith in violation respectively of Sections 10(a)(3), 10(a)(5) and 10(a)(7) of the Real Estate Brokers License Act, 63 P.S. §§440(a)(3), (5) and (7).

The appellant employed eight salesmen in his office. One of these induced Mr. and Mrs. John Neibert to give the appellant the exclusive right for three months from July 14, 1969 to sell their two properties, one in the Borough of Mechanicsburg and the other in Silver Spring Township, Cumberland County. On September 12, 1969, the salesman who had obtained the listing and another of appellant's salesmen proffered to the Neiberts a written agreement to sell the Spring Township property for $14,200, with settlement December 12, 1969. The agreement acknowledged the receipt from the buyer of $3000 and further provided that this deposit should be "forfeited as liquidated damages" upon the failure of the buyer to complete settlement. There is testimony by the Neiberts that one of the salesmen represented that the $3000 had been paid in cash. In fact, the salesman had received no cash and on a date after September 12, 1969 obtained only the buyer's note in this amount payable to the appellant's corporation, Key State Real Estate Co., Inc. The appellant had no knowledge of his salesman's activities in obtaining this agreement but within a week following September 12, 1969 read the agreement and then learned that while the agreement recited the receipt of $3000 that this "deposit" was represented only by a note. He instructed his salesman immediately to obtain cash from the

---

[5] Section 10(a)(7), 63 P.S. §440(a)(7).

buyer in replacement of the note. The salesman was not successful. The appellant did not then nor did he at any time prior to the buyer's failure to settle for the property on December 12, 1969, inform the Neiberts that he had no cash deposit, that the "deposit" was in the form of a note, or that the buyer would not put up cash in place of the note. On December 12, 1969, having heard nothing further from anyone connected with the appellant's office, the Neiberts inquired of one of the salesmen as to the status of the transaction and were told that the buyer could not pay for the property and would not make settlement. When they asked about the deposit they were told to communicate with the appellant. They did so through counsel who communicated with the appellant as early as December 15, 1969. Two of counsel's letters to the appellant are of record and suggest if they do not conclusively establish, that the appellant permitted the Neiberts' counsel to believe that there was $3000 cash in hand from the time of the latter's first inquiry until March 1970 at the earliest. The record further reveals that the Neiberts, in anticipation of the conveyance of the property and their removal to smaller quarters, sold personal property at unfavorable prices on a date after the appellant learned that no cash deposit had been made and that the buyer was unwilling or unable to substitute cash for the note.

The Commission found the facts substantially as we have summarized them. It concluded that these facts established misrepresentation through the salesmen, failure to account for and pay over money and bad faith. Certainly the salesman's assurances to the Neiberts that the deposit was in cash were misrepresentations. They were not, however, made by the appellant. Section 10(a)(3) of the Act, 63 P.S. §440(a)(3), provides for suspension of a broker's license for his sales-

men's misrepresentations only when engaged in as a "continued or flagrant course of misrepresentation." The proofs here were of a misrepresentation in one transaction, not a course of misrepresentation. We do not therefore believe the appellant guilty of the offense described in that subsection. Nor, of course, was the appellant guilty of failure to account for or pay over money, the offense described in Section 10(a)(5), 63 P.S. §440(a)(5). In fact, he had no money either to pay over or account for.

We believe, however, that the Commission properly concluded that the appellant's conduct was improper from the time he discovered and failed to inform the Neiberts that, contrary to the implication of the agreement and the representations of the salesman, there was no cash deposit in hand. Real estate brokerage is an ancient, honorable and useful occupation. It is, however, a pursuit full of pitfalls, one of the most subtle of which is the temptation to switch allegiance from one's principal, usually the seller, either to the buyer or to the transaction itself. And the temptation is especially strong when it is only a matter of not disclosing bad news which may improve. However, "[i]t is an agent's imperative duty to give his principal timely notice of every fact or circumstance which may make it necessary for him to take measures for his security. . . ." *Clark & Co. v. Bank of Wheeling*, 17 Pa. 322, 324 (1851). The appellant's breach of his duty to inform the Neiberts that he had no cash deposit, as they supposed; that the buyer would not supply a cash deposit and that the buyer was unable to complete settlement in accordance with the terms of the agreement were not improperly concluded to be demonstrations of bad faith on the appellant's part, for which appellant's defense of lack of participation in his salesmen's derelictions in obtaining the agreement, supplies no mitigation.

Appellant's defense based upon Section 14 of the Real Estate Brokers License Act, 63 P.S. §444, providing that a broker's license may be *revoked* for a salesman's wrongdoing only upon a showing of the broker's guilty knowledge of the salesman's violations has no value, not only because there was no revocation, but because the suspension is the result of appellant's own failure promptly to make a disclosure to his principals of a matter vital to their interests. *State Real Estate Commission v. Campbell,* 85 Dauphin 241 (1966).

Since the appellant's failure to inform the Neiberts of the precarious status of their transaction, to their detriment, in our view demonstrates bad faith which by Section 10(a)(7) of the Act may be the basis for a suspension, the suspension here ordered was justified. Although the Commission incorrectly found the appellant to be guilty of two other charges, we are not impelled to modify its order which we believe to be reasonable in the circumstances. *See State Real Estate Commission v. Farkas,* 1 Pa. Commonwealth Ct. 134, 274 A. 2d 238 (1971); *State Real Estate Commission v. Evers,* 89 Dauphin 158 (1968).

### ORDER

And now, this 8th day of August, 1973, the appeal of Alfred C. Moore, trading as Key State Real Estate Co., Inc., from the adjudication of the State Real Estate Commission suspending his real estate broker's license is hereby dismissed and the order of suspension is reinstated.