559 A.2d 999

**Richard J. WAGNER, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, STATE REAL ESTATE COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 24, 1989.

Decided June 6, 1989.

Reargument Denied Aug. 16, 1989.

Petition for Allowance of Appeal Denied March 9, 1990.

Richard J. Wagner, Pottsville, petitioner pro se.

Steven Wennberg, Asst. Counsel, State Real Estate Com'n, Joyce McKeever, Chief Counsel, Professional and Occupational Affairs, Velma A. Boozer, Chief Counsel, Dept. of State, Harrisburg, for respondent.

Before CRAIG and BARRY, JJ., and BLATT, Senior Judge.

BARRY, Judge.

Richard J. Wagner appeals an order of the State Real Estate Commission (Commission) which revoked his licenses as a broker, associate broker and salesperson.

In May of 1985, the Commission issued a complaint and order to show cause why his licenses should not be revoked. The complaint charged Wagner with various violations of Section 604 of the Real Estate Licensing and Registration Act ("Licensing Act"), Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. § 455.604. Hearings were held, after which a hearing examiner recommended that Wagner's licenses be revoked. Wagner filed exceptions which were denied and the Commission revoked Wagner's licenses. This appeal followed.

The revocation of Wagner's licenses are based on the following two incidents. In late 1978, Wagner executed and recorded a "vow of poverty" in favor of the Basic Bible Church of America. That document stated in pertinent part that Wagner "do[es] hereby give ... all of my ... real property ... to the Church..." (Board's adjudication and order, October 22, 1987, p. 6). In 1982, Wagner entered into an agreement of sale to convey certain real property [1] to Francis M. Hamerly and Leonard A. Hamerly. The agreement called for a June 16, 1982 closing and further declared that time was of the essence. At the time of signing the agreement, Wagner disclosed to the Hamerlys that certain liens encumbered the property which would be satisfied out of the sale proceeds; Wagner did not disclose the existence of the vow of poverty. The Hamerlys applied for title insurance at Wagner's suggestion but were informed by the title company that no insurance would be issued because of the liens and the vow of poverty. The Hamerlys granted Wagner an extension of the closing date so that he could obtain the necessary documents from the church to clear the title. Wagner pressed for settlement without that documentation by proposing a reduction in the sales price. The Hamerlys rejected the proposal after which Wagner refused to settle the deal. The Hamerlys sued in equity for specific performance and the Court of Common Pleas of

1. The agreement called for the sale of two contiguous unimproved lots, one of which was owned by Wagner and the other by Betty J. Keenan. The agreement did not specify the amount being paid for each parcel but rather called for a single sale price of $32,000.00.

Schuylkill County, after once dismissing the Hamerlys' complaint, entered a decree on August 7, 1984, requiring Wagner to convey the property.[2]

In the second incident, Wagner signed an agreement of sale on December 8, 1982, promising to convey to Patrick and Cheryl James a lot for $5000. Settlement occurred that same day with Wagner delivering a deed in return for the full purchase price. Wagner never informed the Jameses of the vow of poverty or of various liens against the property. Wagner did assure the Jameses that no title problems existed. Wagner also did not inform the Jameses, first time buyers of real estate, that a title search was necessary to protect their interests. Finally, Wagner never explained an endorsement on the sales agreement which provided that the Jameses would take whatever title Wagner could give with no abatement in the purchase price. As of the former hearings in this matter, Wagner had neither cleared the title problems nor returned the Jameses' money.

The Commission concluded that Wagner had committed acts which are prohibited by Section 604(a) of the Licensing Act. First, it concluded that Wagner had made substantial misrepresentations in violation of Section 604(a)(1). Next, the Commission concluded that Wagner had made false promises "likely to influence, persuade or induce any person to enter into any contract when [the promisor] could not ... keep such promise." 63 P.S. § 455.604(a)(2). The Commission also concluded that the conduct in the real estate transactions demonstrated "bad faith, dishonesty, untrustworthiness, or incompetency." 63 P.S. § 455.604(a)(20). Subsection 15 also prohibits licensees from violating any Commission regulation and here Wagner had violated a regulation which prohibits assurances which the licensee knows to be incorrect. 49 Pa.Code § 35.103. Based upon Section 604 which gives the Commission the power to revoke one's license for violations thereof, the Commission revoked all of Wagner's licenses. This appeal followed.

**2.** It cannot be ascertained from the record whether Wagner has complied with this decree of the trial court.

Wagner, who has proceeded pro se throughout, makes several allegations of error, none of which has any merit. Accordingly, we shall affirm the Commission's order.

■ He first argues that a Chapter 13 bankruptcy petition he filed in September of 1985 deprived the Commission of jurisdiction in this case. Even assuming that Wagner's argument is correct, we need not address it as this argument is moot because the bankruptcy court dismissed the petition on January 14, 1987, well before the hearings held before the Commission.

■ Wagner next argues that the Commission lacked jurisdiction over him because he was acting as a *seller* and not as a licensee. We have rejected the same arguments and held that ethical standards of the Licensing act's predecessor applied when a licensee was acting as a principal. *Fibus v. State Real Estate Commission*, 7 Pa.Commonwealth Ct. 74, 299 A.2d 375 (1973); *Yingling v. State Real Estate Commission*, 8 Pa.Commonwealth Ct. 556, 304 A.2d 524 (1973). The prohibited conduct under the Licensing Act is substantially similar to that contained in its predecessor act and we believe our precedent is equally applicable to the present Licensing Act.

■ Wagner next argues that the original dismissal of the Hamerlys' suit for specific performance was res judicata on these administrative proceedings. This argument is specious and requires us to note only that the only identity between the two actions is that Wagner was a defendant in both, thereby falling short of the required four identities for res judicata effect. *Glasgow, Inc. v. Department of Transportation*, 108 Pa.Commonwealth Ct. 48, 529 A.2d 576 (1987).

■ Wagner next argues that he was denied due process in three regards. He first argues that certain exhibits contained in the administrative complaint were illegible and thereby prevented him from preparing a defense. All of the exhibits in question were documents to which Wagner was a signatory. Further, all of the allegations in the

complaint itself were very specific. Considering all of this, we agree with the Commission's conclusion that this argument is absurd.

■ He next alleges that he was denied the assistance of counsel. Wagner argued before the Commission that he could not obtain counsel because of a conspiracy between attorneys to cheat and defraud him of his licenses. Wagner had almost six months after the complaint had been filed before the hearings were held. Considering Wagner's excuse for not retaining an attorney after being informed of his right to an attorney, we see no error in proceeding with Wagner acting pro se.

■ Finally, Wagner argues that he was denied due process when the Commission refused his request for extension of time to file a brief in support of exceptions to the hearing examiner's report of April 30, 1986. On May 21, Wagner sought the extension of time alleging that he was ill, that he was pro se and that he was unfamiliar with the Licensing Act and the regulations of the Commission. The Commission denied his request and on May 29, 1986, Wagner filed his brief. As the Commission stated in its final order and adjudication, "Given [Wagner's] prior procedural maneuverings, the Commission is inclined to view the motion for additional time to file the brief ... as the latest in a series of tactics employed ... to delay [Wagner's] day of reckoning on the charges." (October 22, 1987 Order and Adjudication, p. 20). We do not believe the Commission abused its discretion in refusing the request for additional time.

Affirmed.

## ORDER

NOW, June 6, 1989, the order of the State Real Estate Commission at Nos. 82–RE–1064 and 83–RE–949, dated October 22, 1987, is hereby affirmed.